[Doe v. Quinlan.]

## Doe, *ex dem.* Robinson *v.* Quinlan.

*Ejectment by Wife's Heirs, against Purchaser from Husband and Wife.*

1. *Appointment of trustee.* — On the death of a trustee, appointed by deed, the circuit court had power in 1844 to appoint another in his place.

2. *Title accruing to vendor after conveyance to purchaser.* — A title which accrues to the vendor after he has executed a conveyance to the purchaser, *eo instanti* enures to the benefit of the purchaser.

APPEAL from the Circuit Court of Montgomery.

Tried before the Hon. JAMES Q. SMITH.

This action was brought by Mrs. Mary Jane Robinson against John Quinlan, to recover several city lots in Montgomery, and was commenced on the 27th May, 1872. On the trial, as the bill of exceptions shows, the case was submitted to the jury, under the charge of the court, on an agreed statement of facts, substantially as follows : On and before the 31st December, 1839, Mrs. Sarah H. Carpenter was seized in fee of the lots in controversy ; and on that day, in contemplation of her marriage with Thomas H. Welsh, an ante-nuptial contract, or deed of marriage settlement, was executed by and between her, said Welsh, and Peyton Bibb as trustee, which, after reciting the intended marriage, and describing all the property, real and personal, of which she was then seized and possessed, including the lots now sued for, proceeded as follows: " Now it is hereby agreed between the parties aforesaid, that for and in consideration of the said marriage, and the sum of one dollar paid by the said Peyton Bibb, that from and immediately after the said marriage shall be solemnized, he, the said Peyton Bibb, shall and will stand seized of the foregoing described premises and property, to the uses, trusts, and purposes hereinafter mentioned, and none other — that is to say, in trust to permit the said Thomas Welsh and Sarah H., his wife, during their joint lives, to possess, live in, and occupy the foregoing described premises, and to possess and control the services of the said slaves, free and clear from all interruption ; and, should the parties so choose, to rent the said premises, and to hire the said slaves, he, the said Bibb, shall rent and hire the same, and account therefor to the said Sarah H. during the joint lives of the said Thomas and Sarah ; and if the said Thomas Welsh should survive the said Sarah, and have issue by her, then in trust to permit the said Thomas Welsh to enjoy the said premises and slaves in the most useful and beneficial manner for the maintenance and support of the said Thomas and the said issue, without the said Thomas being at any time accountable to any person for the said rents and profits ; and after the death of the said Thomas and Sarah, in

trust for the children of the said marriage, in equal shares, as
tenants in common, in fee simple ; and if there *is* no children,
then in trust to discharge the bequests the said Sarah H. may,
by will, or any instrument in writing, direct; and should the
said Sarah survive the said Thomas, in trust for her and the
said issue, in such manner as she, the said Sarah, may direct;
and should the said Sarah H. survive the said Thomas, and
there be no issue living, then in trust to reconvey all the prop-
erty and interests herein described to the said Sarah H., free
of all incumbrances, or subject to the will or any other instru-
ment made by the said Sarah H.; and in default of issue, or
any instrument, then to convey said premises and interests to
the next of kin of the said Sarah H.    It is also agreed, as
stipulations of this marriage contract, that the property herein
conveyed shall not at any time be liable for the debts of the
said Thomas Welsh, nor subject to sale or disposal by him;
that for the individual debts of the said Sarah H. the said
property shall be liable, be the same due, or falling due.    It is
further stipulated, that the said Peyton Bibb, if requested by
the said Sarah H. in writing thereto, shall have power to sell
and dispose of all or any of the trust property herein enumer-
ated, and to vest the proceeds in such property as the said
Sarah H. may direct; it being understood, that the proceeds
of any such sale, or any property purchased therewith, shall
be and remain subject to all the trusts herein expressed, in the
same manner as the property is now subject thereto.    In testi-
mony," &c.

This instrument, which was signed by all the parties, and
attested by two witnesses, was acknowledged by the parties,
on the 31st January, 1840, before a justice of the peace, and
duly recorded in the proper office in Montgomery.    The mar-
riage between the said parties was solemnized a few days after
the execution of this instrument, and they lived together as
husband and wife, in said county, until the death of the said
Thomas Welsh in 1865.    In 1844, said Peyton Bibb having
died, the circuit court of Montgomery, at its fall term, made
an order appointing said Thomas Welsh as trustee in his stead
under the marriage settlement.    On the 24th March, 1863,
Mrs. Welsh executed a request and direction in writing to her
said husband, as trustee, to sell the lands in controversy to
Arthur Connell " for the sum of twenty thousand dollars, to
be paid in Confederate treasury-notes, and to execute titles in
fee as such trustee, with covenants of warranty to said lots to
the said Arthur Connell, on being paid the purchase-money,
said covenants of warranty to bind my [her] separate estate."
On the same day, said Welsh and wife joined in a conveyance
of the lots to said Connell, in consideration of the sum of twenty
VOL. LI.

[Doe v. Quinlan.]

thousand dollars in Confederate treasury-notes; the conveyance reciting the marriage settlement, the death of the trustee appointed under it, the appointment of said Welsh as trustee in his stead, the request of Mrs. Welsh to her husband to convey to Connell, and that she joined in the deed as evidence of this request, and containing covenants of warranty on the part of the trustee. Connell took possession of the lands under this deed, and afterwards sold and conveyed to the defendant.

No issue was born of the marriage between said Welsh and his wife. He died, intestate, in 1865; and she died, also intestate, in 1867. "Mrs. Welsh never made or signed any instrument disposing of the said lots, or in execution of any power in said marriage settlement, except as above stated in favor of said Connell. The plaintiffs are her next of kin and heirs-at-law."

The court charged the jury, at the request in writing of the defendant, "that the plaintiffs, under said agreed statement of facts, had no such title as would enable them to recover in this action;" and this charge, to which the plaintiffs excepted, is now assigned as error.

R. M. WILLIAMSON, with FITZPATRICK & GOLDTHWAITE, for appellant. — 1. By the marriage settlement, the legal title to the lands in controversy was vested in Bibb, the trustee. *Dudley* v. *Witter*, 36 Ala. 135; *Stryker* v. *Mott*, 2 Paige, 287; *Vail* v. *Vail*, 4 Paige, 317; *Brewster* v. *Stryker*, 2 Comstock, 19; Hill on Trustees, 357.

2. The legal title having once vested in Bibb, it could only be conveyed to a purchaser by executing the power of sale in strict compliance with the terms of the settlement. However arbitrary or trivial the conditions annexed to the execution of the power, they can only be satisfied by a strict and literal performance. Sugden on Powers, vol. 1, 250 *et seq.*, 3d Amer. from 7th English edition; Hill on Trustees, 472; *Clark's Lessee* v. *Courtney*, 5 Peters, 318–46.

3. The power to sell, given to Bibb by the settlement, was one of personal confidence, and was given to him by name, and not as trustee. In such case, the power cannot be exercised by any other person, even though he be appointed trustee by the chancery court. Hill on Trustees, 211, 226–27, 331, 472; Sugden on Powers, vol. 1, p. 209; *Cole* v. *Wade*, 16 Vesey, 27. Welsh, then, could not have executed the power of sale, even if he had been appointed trustee by the chancery court. But his appointment as trustee by the circuit court was simply void, as that court then had no jurisdiction to appoint except in case of removal or resignation. Clay's Digest, 581, §§ 1, 2, 3; *Howard* v. *Gilbert*, 39 Ala. 729; *Dow* v. *Whitman*, 36 Ala. 604; *Gunn* v. *Howell*, 27 Ala. 663.

[Doe v. Quinlan.]

4. Mrs. Welsh, in anticipation of marriage, undertook by the settlement to protect herself against future harm to her rights of property. She tied her hands, while she yet could, so that neither the influence or importunity of her husband, nor affection, nor fear should make her use them against herself. The manner of conveying was fixed by the settlement, and the title could be conveyed in no other manner. The settlement was for her own protection. *Richards* v. *Chambers*, 10 Vesey, 585 ; *Anderson* v. *Dawson*, 15 Vesey, 536 ; *Methodist Church* v. *Jaques*, 2 John. Ch. 86. She did not attempt to convey. Neither her request to her husband, nor the instrument signed by them both jointly, purports to be her conveyance. Her husband alone conveys, and conveys only " as trustee." Joining in such an instrument does not make it her deed. *Agricultural Bank* v. *Rice*, 4 Howard, 225 ; *Dundas* v. *Hitchcock*, 12 Howard, 267 ; *Carr* v. *Williams*, 10 Ohio, 309 ; 7 Ohio, 194 ; 13 Mass. 223 ; 3 Mason, 347.

5. The instrument signed by Welsh and his wife cannot operate against her by way of estoppel. Bigelow on Estoppel, 276, 485 ; *Lowell* v. *Daniels*, 2 Gray, 161 ; 17 Johns. 167 ; 6 Wendell, 14 ; 1 Comstock, 242 ; 5 Ohio, 190.

6. There having been no valid appointment, and Thomas and Sarah being both dead without issue, the purposes of the trust have been fulfilled, and the legal title is vested in the plaintiffs by operation of law. Rev. Code, § 1576 ; *You* v. *Flinn*, 34 Ala. 409 ; *Comby* v. *McMichael*, 19 Ala. 751 ; Hill on Trustees, 392 (253).

STONE & CLOPTON, WATTS & TROY, SAYRE & GRAVES, and HERBERT & MURPHEY, *contra.* — 1. There was a valid execution of the power, which passed the title to Connell. *Strong* v. *Brewer*, 17 Ala. 710 ; 1 Sugden on Powers, 404, 247.

2. If there was no valid execution of the power, the legal estate vested in Mrs. Welsh on the death of her husband without issue, and enured at once to the benefit of Connell under the deed of her husband and herself. *Kennedy* v. *McCartney*, 4 Porter, 141 ; *McGehee* v. *Eastis*, 2 Stew. & P. 246 ; *Nolen* v. *Gwinn*, 16 Ala. 125.

B. F. SAFFOLD, J. – If the appointment of Thomas Welsh as trustee, in the place of Bibb, the deceased trustee, was valid when made, the terms of the marriage settlement were strictly pursued, and the title of the property passed to Connell, the purchaser. In the case of *State Bank* v. *Smith* (6 Ala. 75), this question was determined affirmatively. The court said : " The statute (Clay's Dig. p. 581) does not in

terms authorize the (circuit) court to appoint a trustee, when the trustee appointed by the parties dies; but we have no doubt that the power of the circuit court so to act is within the spirit and intention of the enactment." It was further held, that the authority to appoint in case of the death of the trustee, given to the register in chancery (Clay's Dig. 350, §§ 32, 33), was concurrent, and not in conflict with the power of the circuit court. The withdrawal of chancery jurisdiction from the common-law judges, in 1839, was also held not to impair their power of appointing trustees.

2. If there could be any doubt on this point, the title to the premises in question, under the marriage settlement and the facts of this case, could not possibly have passed to the next of kin, except by returning to Mrs. Welsh, when, *eo instanti*, it would have enured to the benefit of the defendant. *McGee* v. *Eastis*, 5 Stew. & Port. 426. The judgment is affirmed.